[No. B132298 Second Dist., Div. Five. Jan. 26, 2000.]

TRI-WEST INSURANCE SERVICES, INC., Cross-complainant and Appellant, v.
SEGUROS MONTERREY AETNA, S.A., Cross-defendant and Respondent.

**COUNSEL**

Wilson Kenna & Borys, Timothy W. Kenna and Erin M. Salter for Cross-complainant and Appellant.

*Kumetz & Glick*, Fred J. Kumetz, Stephen Glick and Barbara A. Kumetz for Cross-defendant and Respondent.

**OPINION**

**ARMSTRONG, J.**—Tri-West Insurance Services, Inc. (Tri-West), an insurance broker, appeals from the dismissal of its cross-complaint against Seguros Monterrey Aetna, S.A. (SMA), a Mexican insurance company, in

litigation instigated by a Tri-West client, Swat-Fame, Inc. (Swat-Fame). We agree with the trial court that SMA did not have the requisite minimum contacts with this state for the assertion of jurisdiction, and so affirm the dismissal.

## FACTS

Swat-Fame is a clothing manufacturer which maintains factories in Mexico. In 1995, Swat-Fame contacted Tri-West, seeking transit insurance to cover goods being transported to and from Mexico. Tri-West contacted Peter Ribbens and the Ribbens Insurance Agency (Ribbens) in San Diego, and through Ribbens obtained a policy from SMA. Swat-Fame made its premium payments to Tri-West, for transmission to SMA. According to the allegations of Tri-West's cross-complaint, Ribbens invoiced Tri-West for the payments.

In October of 1996, Swat-Fame suffered a loss in Mexico and made a claim under the policy. SMA informed Swat-Fame that it had never received any premium payments and that the policy had long since been cancelled.

In October of 1997, Swat-Fame sued Tri-West for negligence, breach of fiduciary duty, and fraud. Swat-Fame also sued SMA for breach of contract and bad faith, but later dismissed SMA from the action. In June of 1998, Tri-West sued SMA for equitable indemnity, fraud, conversion, and other causes of action, and served SMA in Mexico.[1]

SMA moved to quash service of summons for lack of personal jurisdiction. In a declaration attached to the motion, SMA underwriting manager Ernesto Garcia Menchaca declared that the Swat-Fame policy was issued after SMA was contacted by a Guadalajara insurance broker named CARSA. CARSA, which was not an agent of SMA, informed SMA that Swat-Fame needed insurance to cover goods being shipped from Mexico to Los Angeles, and vice versa. In April of 1996, SMA issued the policy and delivered it to CARSA in Guadalajara. Swat-Fame alleged that it had received an English translation of the policy, but Menchaca declared that SMA had never prepared or delivered an English translation of the policy to anyone. Menchaca also declared that SMA never received any premium, and the policy was thus cancelled by operation of Mexican law in May of 1996. In July, CARSA physically returned the policy to SMA. Prior to Swat-Fame's claim

---

[1] The parties dispute the facts regarding service, but since we resolve this case on jurisdictional grounds, we need not summarize those facts here. Similarly, we need not and do not review the trial court's holding that Tri-West failed to properly serve SMA.

of loss, SMA had never communicated, either orally or in writing, with Swat-Fame or Tri-West, or Ribbens, and did not even know of Tri-West's or Ribbens's existence.

Menchaca further declared that SMA had never had any insurance agents in California, never had an office or conducted business in California, and never advertised or solicited business in California. It never delivered an insurance policy in California, mailed premium notices to California, or collected premiums in California. It required its insureds to have a business address in Mexico, where notices and bills could be sent. Swat-Fame provided SMA with such an address.

These facts were not disputed by Tri-West, although the legal significance of the facts was. The sole additional fact Tri-West added was that the SMA policy included Swat-Fame's California address.

The trial court found that SMA did not have the requisite minimum contacts with California for the assertion of jurisdiction. The court quashed service of process and dismissed the action with prejudice.

### DISCUSSION

We begin with Tri-West's argument that jurisdiction is proper under Insurance Code sections 1610 and 1611. This argument has been made and rejected before. Insurance Code sections 1610 and 1611 provide that specified acts by nonadmitted, foreign insurers constitute the appointment of the California Insurance Commissioner as the insurer's attorney for service of process. The statutes "are simply service of process statutes providing that specified acts by a nonresident insurer not admitted to do business in this state shall constitute an appointment by such insurer of the Insurance Commissioner as attorney for the service of process. [Citation.] However, before sections 1610 and 1611 may be utilized to obtain jurisdiction over a nonresident insurer, the power to exercise jurisdiction over that insurer must be found to exist pursuant to Code of Civil Procedure section 410.10." (*In re Marriage of Martin* (1989) 207 Cal.App.3d 1426, 1433 [255 Cal.Rptr. 720].) The Insurance Code does not provide a basis for exercising jurisdiction over SMA.

Under Code of Civil Procedure section 410.10, "A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." Our Supreme Court has explained that, "A state court's assertion of personal jurisdiction over a nonresident defendant who has not been served with process within the state comports

with the requirements of the due process clause of the federal Constitution if the defendant has such minimum contacts with the state that the assertion of jurisdiction does not violate ' "traditional notions of fair play and substantial justice." ' (*International Shoe Co. v. Washington* (1945) 326 U.S. 310, 316 [90 L.Ed. 95, 102, 66 S.Ct. 154, 161 A.L.R. 1057] . . . ." (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444 [58 Cal.Rptr.2d 899, 926 P.2d 1085], citations omitted.)

The court further explained that personal jurisdiction may be either general or specific. General jurisdiction arises if the nonresident defendant has substantial, continuous, and systematic contacts in the forum. A nonresident defendant without such contacts may be subject to the specific jurisdiction of the forum if the defendant has purposefully availed himself or herself of forum benefits and the controversy is related to or arises out of the defendant's contacts with the forum. (*Vons Companies, Inc. v. Seabest Foods, Inc., supra*, 14 Cal.4th at pp. 445-446.)

Specific jurisdiction arises when a nonresident defendant has purposefully directed his or her activities at forum residents, or has purposefully derived benefit from forum activities, or has purposefully availed himself or herself of the privilege of conducting activities within the forum, or has deliberately engaged in significant activities with a state or has created continuing obligations between himself and residents of the forum. In such cases the defendant has availed himself of the privilege of conducting business in the forum, and because his activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well. (*Vons Companies, Inc. v. Seabest Foods, Inc., supra*, 14 Cal.4th at p. 444.)

We evaluate the facts herein with those principles in mind. Because the evidence of jurisdictional facts is not conflicting, the question before us is one of law. (*Pennsylvania Health & Life Ins. Guarantee Assn. v. Superior Court* (1994) 22 Cal.App.4th 477, 481 [27 Cal.Rptr.2d 507].) Further, Tri-West has the burden of establishing by a preponderance of the evidence that jurisdiction is proper. (*Ibid.*)

The parties agree that it is specific jurisdiction which is at issue here, and that the sole act through which such jurisdiction could arise was the issuance of an insurance policy which covered goods while in transit in California, to a company which maintained a California address. We do not believe that with that action, SMA availed itself of the privilege of conducting business in California so that it should be subjected to the burdens of

litigation in this forum. The issuance of the policy is not a sufficient contact for the exercise of jurisdiction.

Tri-West analogizes this case to *Vons Companies, Inc. v. Seabest Foods, Inc.*, *supra*, 14 Cal.4th 434 and *McClanahan v. Trans-America Ins. Co.* (1957) 149 Cal.App.2d 171 [307 P.2d 1023]. We do not believe that the cases are sufficiently similar to assist Tri-West.

*Vons Companies, Inc.* arose out of the injuries suffered by Jack-in-the-Box customers from exposure to the E. coli bacteria. Jack-in-the-Box franchisees sued Vons, a meat supplier, and Vons sought to cross-complain against the franchisees, alleging that the customer injuries would have been avoided if the meat had been properly cooked. The issue before the Supreme Court was whether the franchisees, Washington corporations, had sufficient contact with California for the assertion of jurisdiction here. Notably, Foodmaker, Inc., a Delaware corporation which is the parent company of Jack-in-the-Box, had its principal place of business in California. The court closely examined the franchisees' relationships with Foodmaker and this state, and found extensive contact. Among the contacts the court discussed were the fact that the franchise agreements between the franchisees and Foodmaker were signed in California, and the franchisees' agreements with their own restaurants provided that disputes would be litigated in California under California law. Each franchisee did extensive business with Foodmaker in California, and had agreed to follow Foodmaker directions in food preparation and to buy supplies from Foodmaker or from suppliers approved by Foodmaker. (*Vons Companies, Inc. v. Seabest Foods, Inc.*, *supra*, 14 Cal.4th at pp. 442-443, 456.) The court concluded that California could exercise specific jurisdiction over the franchisees, since each had purposefully availed itself of the benefits in this state by reaching out to State residents to create an ongoing franchise relationship. (*Id.* at p. 449.)

Tri-West argues that this case is like *Vons Companies*, because Tri-West's claim against SMA relates to SMA's contract with Swat-Fame. We see no such similarity. The extensive web and network of California contacts set forth in *Vons Companies* is in stark contrast to the situation here, where SMA did not solicit a business relationship with Swat-Fame in California, did not carry on the relationship in California, and never dealt directly with Swat-Fame. It merely issued a policy which covered specified property while it was in transit in California, to a company which maintained an address in California. This is so unlike the extensive contacts and inter-relationships described in *Vons Companies* that the case is no authority for the assertion of jurisdiction in this case. Instead, the contrast between the extensive contacts

in *Vons Companies* and the scant contact here indicates that the result in the case should not be the same as the result in that one.

In *McClanahan*, the defendant was an Alabama insurance company which was not qualified to do business in California and did not solicit business here. However, it had issued liability automobile insurance to policyholders who drove in California, and had adjusted and defended numerous cases here. When one of its policyholders was involved in an accident in California, the insurance company investigated and defended the resulting claim, but did not pay the judgment entered against it. (*McClanahan v. Trans-American Ins. Co.*, *supra*, 149 Cal.App.2d at pp. 173-174.) The plaintiff sued under the policy, but the trial court quashed service of the summons. The Court of Appeal that cited *International Shoe Co. v. Washington, supra*, 326 U.S. 310 noted that the rule enunciated therein was a qualitative, rather than quantitative, test of minimum contacts, and reversed the trial court order. The court based its holding on the fact that by the very nature of the automobile insurance business, the insurance company knew that its insureds might drive in California, and that it might be necessary to come into the courts of this state to assert its rights and defend its obligations under the policies.

Tri-West points out that SMA, like the defendant in *McClanahan*, is an insurance company, and argues that it, too, knew that it might be necessary to come into the courts of this state. The argument ignores the fact that the insurer in *McClanahan* was a *liability* insurer, and as such had obligated itself to litigate in this state in actions in which, as the *McClanahan* court noted, it was the real party in interest. SMA issued a property policy which—as far as this record discloses—included no liability coverage. SMA did not volunteer to litigate in this state, but merely to pay claims to its insured for property loss.

Thus, we find this case dissimilar to *Vons Companies* and *McClanahan*, but similar to *Benefit Assn. Internat., Inc. v. Superior Court* (1996) 46 Cal.App.4th 827 [54 Cal.Rptr.2d 165]. In that case, two Venezuelan citizens, husband and wife, bought traveler's medical coverage from a Mississippi corporation which maintained offices in Florida and Mississippi. The policy, which was purchased in Florida through an insurance agent, conferred exclusive jurisdiction on the courts of Mississippi. The husband traveled to California, where he became ill. Members of his family and the hospital which treated him attempted to collect benefits under the policy. The insurance company denied coverage and rescinded the policy on the ground that a preexisting condition had been concealed. The husband filed suit in

California, but the Court of Appeal held that service of summons should have been quashed. The court noted that the insurer had only agreed to pay medical expenses in California, not to provide the insured with a defense, as in a liability policy, and also noted that there was no evidence that the insurer had been involved with California or had purposefully availed itself of the California market. Instead, the insured's sole evidence was that the agent had told him that the policy would cover medical costs incurred in California. There was no evidence that the insurance company had ever before insured a person travelling to California, paid a California medical bill, advertised or marketed in California, or otherwise participated in commerce in California. The court held that the mere issuance of policies to two insureds who might travel in California was not sufficient.

Here, too, there is no evidence that SMA insured other California business entities, or insured anyone for losses in California, except Swat-Fame, or was otherwise engaged in commerce in California. *Benefit Assn. Internat.* bolstered its conclusion with reference to the forum-selection clause in the contract, and arguments concerning the convenience of trying the case in Mississippi, factors not present here. However, we do not find that the lack of those factor is critical. Like the health insurer in *Benefit Assn. Internat.*, SMA had contacts with California too slight to constitute a purposeful availment of the benefits of the California economic market.

As the *McClanahan* court observed, "Since it is apparent that no hard and fast rule can be adopted which would apply to all cases, it is obvious that the final determination must be predicated upon the peculiar facts of each individual case." (*McClanahan v. Trans-America Ins. Co., supra,* 149 Cal.App.2d at p. 172.) The peculiar facts of this case are that SMA had minimal contacts with California, insufficient for the exercise of specific jurisdiction.

### DISPOSITION

The judgment is affirmed. Respondent to recover costs on appeal.

Turner, P. J., and Godoy Perez, J., concurred.