[No. B149096. Second Dist., Div. One. Jan. 31, 2002.]

PEDUS BUILDING SERVICES, INC., et al., Plaintiffs and Appellants, v. TEXAS W. ALLEN, Defendant and Respondent.

## COUNSEL

Kirtland & Packard, Steven M. Maslauski and Joseph Geri for Plaintiffs and Appellants.

Baker & McKenzie, Michael P. McCloskey and Colin H. Murray for Defendant and Respondent.

## OPINION

**SPENCER, P. J.—**

### INTRODUCTION

Plaintiffs Pedus Building Services, Inc., and WCS, Ltd. appeal from the order granting defendant Tex W. Allen's motion to quash service of summons for lack of personal jurisdiction and dismissing the complaint. We reverse.

FACTUAL AND PROCEDURAL BACKGROUND[1]

On August 29, 2000, plaintiffs filed this action for equitable relief and damages against defendant, setting forth causes of action for (1) declaratory and injunctive relief, (2) intentional interference with economic advantage, (3) unfair competition, (4) breach of contract and (5) misappropriation of trade secrets and other confidential information. Plaintiffs served defendant with a copy of the summons and complaint on September 11.

According to the allegations of the operative complaint, plaintiff Pedus Building Services, Inc. (Pedus) "is a large multi-national corporation that provides janitorial and security services for building owners throughout the United States." It "is a wholly-owned subsidiary of Plaintiff WCS, Ltd." Pedus is a California corporation whose principal place of business is in Monterey Park, California.[2]

The complaint further alleges that plaintiffs hired defendant in 1991 to serve as a regional manager. In that capacity, defendant oversaw plaintiffs' janitorial and security services operations in various areas. In 2000, defendant resigned from his position and entered into a nondisclosure, nonsolicitation and noncompete agreement (noncompetition agreement) with plaintiffs through their president, Richard G. Jackson (Jackson), on May 19, 2000. Defendant and plaintiffs also executed an employee separation agreement and release (separation agreement).

Among other things, the noncompetition agreement prohibited defendant from disclosing confidential information and material inside information about Pedus. The noncompetition agreement also provided that for one year

---

[1]On our own motion, we have augmented the record on appeal to include the superior court file. (Cal. Rules of Court, rule 12(a).)

[2]At the hearing on the motion to quash service of summons, the trial court observed "there has been no showing on this motion as to where the plaintiffs' corporation is incorporated or where its principal place of business is." Plaintiffs' counsel immediately responded, "That would be in Los Angeles, Your Honor." Defense counsel did not voice any disagreement.

In light of the trial court's observation, on December 13, 2001, we vacated our previous submission and notified the parties that we were considering taking judicial notice of the official records of the California Secretary of State confirming that Pedus is a California corporation with its principal place of business in Monterey Park, California. We gave the parties "15 days in which 'to present to the court information relevant to (1) the propriety of taking judicial notice of the matter and (2) the tenor of the matter to be noticed.' (Evid. Code, § 455, subd. (a); see also § 459, subd. (c))." We also informed the parties that the matter would be resubmitted upon expiration of the 15-day period.

The parties timely submitted supplemental letter briefs. They had no objection to this court taking judicial notice of the official records of the California Secretary of State, demonstrating that Pedus is a California corporation whose principal place of business is in Monterey Park, California. We therefore do so. (Evid. Code, § 452, subd. (c).)

after defendant's termination from employment, he would not call upon any of Pedus's clients or prospective clients to whom Pedus had sent a written proposal, divert any of Pedus's clients, provide services to a Pedus client or prospective client while serving as a director, officer, employee, agent, or owner of more than 5 percent capital stock of any business in direct or indirect competition with Pedus, interfere with Pedus's existing or prospective business relationships or solicit Pedus employees to leave Pedus's employment to work for a competitor.

In exchange for signing the noncompetition and separation agreements, defendant received periodic monetary payments and health benefits, among other things. Defendant acknowledged that the latter document "extinguishes all claims, whether known or unknown, foreseen or unforeseen." Defendant expressly waived the protection of California Civil Code section 1542, which provides that "[a] general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor." He also expressly waived "any rights or benefits under Texas law, including any and all rights, claims, and damages of any kind, known or unknown, past or future, under any law or statute." In addition he "expressly waive[d] and relinquish[ed] any rights under any law or stature [*sic*] to the contrary."

Plaintiffs instituted this action against defendant after learning that he was working for one of Pedus's direct competitors. This competitor provides janitorial services in the same region defendant managed for plaintiffs. Plaintiffs alleged that defendant violated the terms of the noncompetition agreement in numerous particulars.

On October 2, 2000, defendant removed this case to federal court pursuant to 28 United States Code sections 1441 and 1446. Contemporaneously with his notice of removal, defendant filed, in federal court, a motion to stay proceedings and to compel arbitration,[3] as well as a demand for a jury trial on all claims for relief.

Also on October 2, 2000, defendant filed in federal court a motion to dismiss the case pursuant to Federal Rules of Civil Procedure, rule 12(b)(2) (28 U.S.C.), on the ground that the court lacked personal jurisdiction over him, in that he lacked minimum contacts within the State of California. Defendant's motion to stay the proceedings and to compel arbitration, as

---

[3]The motion was "brought pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16 and [was] based on the fact that the parties have signed an agreement to resolve the disputes that are the subject matter of this lawsuit through arbitration."

well as his motion to dismiss, was noticed for hearing on October 30, 2000. The appellate record does not reveal the district court's rulings, if any, on these two motions.

Defendant originally sought removal to federal court on the basis of federal question jurisdiction under 28 United States Code section 1331 but failed to show the existence of such a question. In response to an order to show cause issued by the United States District Court for the Central District of California, defendant sought to amend his notice of removal to premise subject matter jurisdiction on the basis of diversity of citizenship under 28 United States Code section 1332. Defendant did not set forth facts demonstrating that the amount in controversy exceeded $75,000, however. The district court consequently concluded that it lacked subject matter jurisdiction. On November 6, 2000, the district court issued an order remanding this case back to state court for lack of federal subject matter jurisdiction. The remand order was filed in the Los Angeles Superior Court on November 9, 2000.

On December 1, 2000, the trial court scheduled a status conference for January 24, 2001. Thereafter, on December 7, 2000, defendant filed a motion to quash service of summons, which he supported with his own declaration. The motion was made on the ground that the state court lacked personal jurisdiction over defendant. Plaintiffs opposed the motion and supported their opposition with Jacksons's declaration.

Defendant declared that he is a longtime resident of Texas. He has never resided or attended school in California. He has never purchased or owned property in California. He has never paid taxes in California. He has never had a license of any kind in California or been subject to any licensing or regulatory authority in California. He has never had a business with a connection to California, nor has he directly derived income or revenue from activities occurring within California.

Defendant further stated that he was employed in the Dallas, Texas office of Pedus from May 1991 through May 2000. During this time, he primarily worked out of the Dallas office, calling on customers in Texas. Colorado and Louisiana were part of defendant's territory during a portion of his time with Pedus. On one occasion, he called on prospective customers in Florida, Tennessee and Ohio.

While employed by Pedus, defendant traveled to Pedus's California offices each year for administrative or organizational purposes, such as annual meetings, performance reviews and budget planning. During his trips to

California, defendant never called on existing or prospective customers in California or generated income for Pedus in California. Other than these required business trips, defendant did not visit California for business or personal reasons. In addition, other than renting a hotel room or car or making other miscellaneous purchases incident to his business trips while employed by Pedus, defendant never transacted any business in California.

Defendant's travel records for the years 1996 through 2000 disclose that he spent a total of 29 days in California. More specifically, in 1996 defendant traveled to Los Angeles once and spent one day. The following year, defendant traveled to California twice, spending three days in Los Angeles and three days in San Diego. In 1998, defendant made two trips to Los Angeles and stayed a total of three days. During the next two years, the frequency of defendant's trips to California increased. In 1999, defendant made five trips to Los Angeles where he spent a total of 12 days. Finally, in 2000, defendant spent a total of seven days in Los Angeles over the course of four trips. According to defendant, his business trips to California from 1991 through 1995 "were no more frequent."

During his tenure with Pedus, defendant received a salary and incentive payments from Pedus. All checks and compensation paid to defendant were prepared in California and paid from Pedus's California accounts.

On April 10, 2000, defendant went to Pedus's Los Angeles office to tell Jackson, his supervisor, that he was resigning. According to defendant, Jackson raised the issue of separation and noncompetition agreements. Forms of these agreements were sent to defendant in Texas. Negotiations then took place on the telephone, by mail and at Pedus's Dallas office, with defendant ultimately signing both agreements in Dallas.

Jackson, plaintiffs' president and chief executive officer, provided more details of his meeting with defendant. During their April 10, 2000 meeting, defendant asked for severance money. Although Pedus typically did not offer severance when an employee voluntarily resigned from service, Jackson proceeded to negotiate a separation agreement, as well as a nondisclosure, noncompetition and nonsolicitation agreement, in consideration for money. Defendant was not obligated to enter into these agreements, but elected to do so in order to obtain additional money.

During their meeting, defendant and Jackson discussed the terms of the agreements. The following day, defendant and Jackson again met for a negotiation breakfast at a hotel in Rosemead, California. At that meeting, Jackson gave defendant a typewritten proposal containing a summary of the

proposed terms they had discussed the day before. Further negotiations took place with the men agreeing that a final written agreement thereafter would be prepared and executed.

Following the April 11, 2000 meeting, defendant and Jackson exchanged drafts of the written agreements. These drafts were sent to defendant via facsimile from California. Jackson executed the final agreements in California. Defendant executed them in Texas, delivering his signatures to Jackson via facsimile. All monetary payments to defendant under these agreements were sent from California.

Jackson claimed that during his negotiations with defendant, "it was clear . . . that any action to enforce the[] agreements would take place in California." According to Jackson, he and defendant discussed this fact. Defendant requested that "if any action [were] filed in an arbitration proceeding in California, that Pedus would pay for his travel and hotel costs." The men agreed that if Pedus filed an action in California and if it further chose to invoke arbitration, it would pay defendant's travel and hotel costs. Jackson further claimed that the term "if" was intended to allow either party to select arbitration or the court system as the vehicle for resolving disputes. The written agreement of the parties thus contemplated a legal action filed in California in lieu of an arbitration proceeding. According to Jackson, by filing a legal action in California, Pedus waived its right to arbitrate.

The noncompetition agreement specified that "[i]n construing the terms 'misappropriate,' and 'trade secret,' the terms are used as they are defined in California's Uniform Trade Secrets Act." The separation agreement expressly stated that "[t]his Agreement and Release shall be governed solely by and construed in accordance with the laws of the State of California."

The separation agreement further provided that the noncompetition agreement "applies to and shall be strictly complied with in the cities and regions that Employee has been responsible for including but not limited to Dallas, Fort Worth, Corpus Christi, El Paso, San Antonio, Houston, Tulsa, Denver, and New Orleans, for a period from the present until November 7, 2001." With regard to arbitration, the separation agreement provided: "Any dispute or claim arising out of or related to this Separation Agreement and Release and or the Nondisclosure, Nonsolicitation, Noncompete Agreement shall be resolved by mandatory arbitration, in a proceeding subject to the commercial arbitration rules of the American Arbitration Association and the Federal Arbitration Act 9 U.S.C. 1-16. The decision of the arbitrator(s) shall be binding on all parties. Company will bear reasonable travel and hotel expenses of Texas W. Allen if Company invokes arbitration. Texas W. Allen

will bear all personal travel and hotel expenses if Texas W. Allen invokes arbitration."

On January 18, 2001, defendant filed a status conference questionnaire, noting therein that the case was not at issue—i.e., that he had not answered the complaint—in that he had filed a motion to quash service of summons based on lack of personal jurisdiction. On January 24, 2001, the trial court granted defendant's motion to quash service, concluding that "the contacts with California [were not] sufficient to establish either general or special jurisdiction." The court then dismissed this action.

## CONTENTION

Plaintiffs contend the order granting defendant's motion to quash service of summons must be reversed. We agree.

## DISCUSSION

In support of their contention that the trial court's order quashing service of summons due to lack of personal jurisdiction must be reversed, plaintiffs assert that (1) defendant made a general appearance in federal court when he filed a motion to stay the proceedings and compel arbitration, (2) the minimum contacts required for personal jurisdiction exist, (3) specific jurisdiction exists, and (4) general jurisdiction exists. It is unnecessary us to address plaintiffs' first assertion. Assuming for the sake of argument that defendant did not submit to the personal jurisdiction of the federal court, we conclude that in state court, plaintiffs met their burden of demonstrating the existence of minimum contacts justifying the exercise of personal jurisdiction over defendant. In addition, defendant has failed to demonstrate that the exercise of jurisdiction would be unreasonable. (*Malone v. Equitas Reinsurance Ltd.* (2000) 84 Cal.App.4th 1430, 1436 [101 Cal.Rptr.2d 524].)

Code of Civil Procedure section 410.10 provides that "[a] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." ▉ As this court stated in *Malone v. Equitas Reinsurance Ltd., supra,* 84 Cal.App.4th 1430, "[w]hen a defendant moves the trial court to quash service of summons for lack of personal jurisdiction, the plaintiff has the initial burden of proving that sufficient contacts exist between the defendant and California to justify the exercise of personal jurisdiction. [Citation.] If that burden is met, the burden shifts to the defendant to demonstrate that the assumption of jurisdiction would be unreasonable. [Citation.] Where the evidence of jurisdictional facts is not in conflict, we independently review the trial court's decision. [Citation.] To the extent there are conflicts in the evidence, we must resolve them in favor of the prevailing party and the trial court's order. [Citation.]

■ " 'California's "long-arm" statute extends the jurisdiction of California courts to the outermost boundaries of due process. "A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." ' [Citation.] '[T]he forum state may not exercise jurisdiction over a nonresident unless the relationship of that person or entity to the state is such as to make the exercise of such jurisdiction reasonable.' [Citation.]

"As the United State Supreme Court explained in *Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 461 [105 S.Ct. 2174, 85 L.Ed.2d 528]: 'The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful "contacts, ties, or relations." . . . By requiring that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign," . . . the Due Process Clause "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." . . . [¶] . . . [¶]

■ " '[T]he constitutional touchstone remains whether the defendant purposefully established "minimum contacts" in the forum State. . . . In defining when it is that a potential defendant should "reasonably anticipate' out-of-state litigation, the Court frequently has drawn from the reasoning of *Hanson* v. *Denckla*, 357 U.S. 235, 253 [78 S.Ct. 1228, 1239-1240, 2 L.Ed.2d 1283] (1958): "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."

" 'This "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts, . . . or of the "unilateral activity of another party or a third person," . . . Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a "substantial connection" with the forum State. . . . Thus where the defendant "deliberately" has engaged in significant activities within a State, . . . or has created "continuing obligations" between himself and residents of the forum, . . . he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to

require him to submit to the burdens of litigation in that forum as well.' (*Burger King Corp. v. Rudzewicz, supra,* 471 U.S. at pp. 471-476 [105 S.Ct. at pp. 2181-2184]).") (*Malone v. Equitas Reinsurance Ltd., supra,* 84 Cal.App.4th at pp. 1435-1437, fn. omitted.)

■ Personal jurisdiction can be either general or specific. (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1966) 14 Cal.4th 434, 445 [58 Cal.Rptr.2d 899, 926 P.2d 1085].) A nonresident defendant's substantial, continuous and systematic contacts with the forum state give rise to general jurisdiction. (*Ibid.*) When general jurisdiction exists, there need be no connection between the cause of action alleged and defendant's business relationship to the forum. (*Id.* at pp. 445-446.) "Such a defendant's contacts with the forum are so wide-ranging that they take the place of physical presence in the forum as a basis for jurisdiction." (*Id.* at p. 446.)

■ A nonresident defendant whose contacts with the state are not substantial, continuous, and systematic nonetheless may be subject to the specific jurisdiction of the forum. (*Vons Companies, Inc. v. Seabest Foods, Inc., supra,* 14 Cal.4th at p. 446.) "Specific jurisdiction arises when a nonresident defendant has purposefully directed his or her activities at forum residents, or has purposefully availed himself or herself of the privilege of conducting activities within the forum, or has deliberately engaged in significant activities with a state or has created continuing obligations between himself and residents of the forum. In such cases the defendant has availed himself of the privilege of conducting business in the forum, and because his activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well. [Citation.]" (*Tri-West Ins. Services, Inc. v. Seguros Monterrey Aetna, S.A.* (2000) 78 Cal.App.4th 672, 677 [93 Cal.Rptr.2d 78].)

Stated otherwise, if the nonresident defendant does not have sufficient contacts with the forum state to subject him or her to its general jurisdiction, " 'he or she still may be subject to the specific jurisdiction of the forum, if the defendant has purposely availed himself or herself of forum benefits [citation], and the "controversy is related to or 'arises out of' a defendant's contacts with the forum." [Citation.]' " (*Jewish Defense Organization, Inc. v. Superior Court* (1999) 72 Cal.App.4th 1045, 1054 [85 Cal.Rptr.2d 611], italics omitted.) ■ If the defendant has sufficient contacts with the forum state for it to exercise its specific jurisdiction, the court must consider these contacts in conjunction with other factors " ' "to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.' " ' " (*Ibid.*) Such factors include the burden on the defendant of litigating the matter in the forum state, " 'the forum state's interest in

adjudicating the claim, the plaintiff's interest in convenient and effective relief within the forum, judicial economy, and "the 'shared interest of the several States in furthering fundamental substantive social policies.' " ' " (*Ibid.*)

Based on the foregoing, a three-part test has been developed for determining whether a defendant is subject to the forum state's specific jurisdiction: " '(1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable.' [Citation.]" (*Jewish Defense Organization, Inc. v. Superior Court supra*, 72 Cal.App.4th at p. 1054.)

The evidence pertaining to defendant's motion to quash is undisputed. The parties do not contend otherwise. We therefore review independently the decision of the trial court. (*Malone v. Equitas Reinsurance Ltd., supra*, 84 Cal.App.4th at p. 1436.)

Contrary to plaintiffs' assertion, general jurisdiction does not exist in this case. We cannot conclude that defendant's contacts with California were substantial, continuous, and systematic, nor can we conclude that they were so wide-ranging as to constitute a physical presence in California. (*Vons Companies, Inc. v. Seabest Foods, Inc., supra*, 14 Cal.4th at p. 446; *Tri-West Ins. Services, Inc. v. Seguros Monterrey Aetna, S.A., supra*, 78 Cal.App.4th at p. 677.) ■ We do conclude, however, that specific jurisdiction exists, in that defendant purposefully availed himself of the privilege of conducting business in California.

The evidence discloses that defendant worked for Pedus, a company that was incorporated and has its principal place of business in California. Although defendant had no business customers in this state, during his nine-year tenure with Pedus, he was required to make a substantial number of business trips to California. That these trips were made for administrative purposes does not minimize their significance. These trips undoubtedly served to advance defendant's career and were a requirement of his job. Thus, a portion of defendant's job actually was performed in California.

More significantly, after deciding to resign, defendant traveled from Texas to California to speak with Jackson. During the course of two separate

meetings, the men negotiated the terms of the noncompetition and separation agreements upon which this action is predicated. Although the agreements were finalized after defendant returned home to Texas, they were for the most part negotiated in this state. Any additional negotiations were conducted by telephone, mail and fax. Ultimately, Jackson executed the agreements here. Defendant, on the other hand, executed the agreements in Texas, delivering his signatures to Jackson via facsimile transmission. Thereafter, pursuant to the agreement of the parties, defendant received numerous benefits, including monetary payments and health benefits from plaintiffs. By purposefully availing himself of the privilege of conducting activities within this state, defendant has invoked the benefits and protections of its laws. It therefore is not unreasonable to require him to submit to the burdens of litigating in this state as well. (*Burger King Corp. v. Rudzewicz, supra*, 471 U.S. at p. 476 [105 S.Ct. at p. 2184]; *Malone v. Equitas Reinsurance Ltd., supra*, 84 Cal.App.4th at p. 1437.) We conclude that defendant has sufficient minimum contacts with California.

Consideration of these minimum contacts in light of other pertinent facts leads us further to conclude that the assertion of personal jurisdiction in this case comports with fair play and substantial justice. (*Vons Companies, Inc. v. Seabest Foods, Inc., supra,* 14 Cal.4th at p. 446.) Here, defendant agreed that the separation agreement would "be governed solely by and construed in accordance with California law." He waived the protection of Civil Code section 1542. The noncompetition agreement also specified that California's Uniform Trade Secrets Acts was to be referred to when construing various terms in the noncompetition agreement. In addition, the separation agreement contained an arbitration clause providing that plaintiffs would pay for defendant's travel expenses if they invoked arbitration proceedings. Defendant, on the other hand, agreed to pay for his own travel expenses if he invoked arbitration proceedings. The separation agreement expressly referred to the noncompetition agreement. The only reasonable inference to be drawn from these contractual provisions is that the parties contemplated that arbitration would *not* take place in Texas.

Given the express reference to California law in both the noncompetition and separation agreements, it can be inferred reasonably that the parties contemplated and agreed that any dispute pertaining to the noncompetition and separation agreements would be resolved in California. Under these circumstances, we conclude that the exercise of specific jurisdiction comports with fair play and substantial justice. (*Vons Companies, Inc. v. Seabest Foods, Inc., supra,* 14 Cal.4th at p. 446.)

The order is reversed. Plaintiffs are awarded costs on appeal.

Ortega, J., and Vogel (Miriam A.), J., concurred.