833 So.2d 157 (2002)
In re ESTATE OF Michael A. O'KEEFE, Deceased.
Patrick H. O'Keefe, Samantha G. O'Keefe, Jennifer D. Bryan, Anthony M. O'Keefe, And Patrick H. O'Keefe, as Conservator for Sally T. O'Keefe and as Conservator for Molly D. O'Keefe, Appellants,
v.
Peter A. O'Keefe, Appellee.
No. 2D01-2920.
District Court of Appeal of Florida, Second District.
August 9, 2002.
*158 John J. Waskom of Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A., Sarasota, for Appellants.
Robert K. Robinson and Kevin J. Kapusta of Bowman George Scheb Toale & Robinson, P.A., Sarasota (withdrew after briefing); Anthony C. Ekonomides of The Ekonomides Law Firm, P.A., St. Petersburg (substituted as counsel of record), for Appellee.
COVINGTON, Judge.
The appellants challenge a probate court order that denies their application for the recognition of a California judgment. We reverse.
The basic facts herein are the same as those underlying the controversy in O'Keefe v. Burchett, 833 So.2d 162 (Fla. 2d DCA 2002). That is, on September 5, 1996, the decedent, Michael A. O'Keefe, an orthopedic surgeon, died from massive injuries he suffered in a plane crash in Montana. At the time, the decedent was unmarried and a resident of Sarasota County. On September 27, 1996, his last will and testament dated May 14, 1996, was accepted for probate in the Circuit Court for Sarasota County. In accordance with the will, the decedent's brother, Anthony D. O'Keefe, was appointed personal representative.
The decedent's will set forth specific bequests to four of his seven surviving adult children. Those children, Patrick O'Keefe, Samantha O'Keefe, Anthony M. O'Keefe, and Jennifer Bryan, are the appellants. The decedent's remaining three children were specifically disinherited. The appellee, Peter O'Keefe, was one of the decedent's disinherited children.
At the time of his father's death, Peter, a resident of Las Vegas, Nevada, also stood to be disinherited by his paternal grandmother, who was still alive and whose conservatorship estate was in litigation in Kansas. At issue in that litigation was, among other things, the grandmother's irrevocable trust, which omitted Peter but otherwise included the four appellants as beneficiaries thereunder. Peter contested his disinheritance by his grandmother and planned to do the same with respect to his father. In October 1998, however, he entered into a "Compromise, Settlement Agreement and Release" with the appellants, wherein he agreed to refrain from pursuing, and thus forever waive, any claims he might have against the estates and/or trusts of either his grandmother or his father. In so agreeing, Peter specifically assigned to the appellants any interest he ultimately might have in those matters. In return, the appellants paid him $10,000. The foregoing agreement was entered into in Orange County, California, and further provided:
In the event a dispute arises between the parties concerning this Agreement or its performance or breach, the parties agree that all such disputes shall be resolved by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and any judgment on the award *159 rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. AS A RESULT OF THIS PROVISION, NO PARTY TO THIS AGREEMENT WILL BE ENTITLED TO HAVE A JUDGE OR JURY DECIDE THE DISPUTE AND EACH PARTY HEREBY EXPRESSLY WAIVES ANY RIGHT TO TRIAL BY JURY ON SUCH CLAIM. The laws of the State of California will govern this Agreement and any such arbitration shall take place in Orange County, California and shall be conducted pursuant to the provisions of Title 9 of Part Three of the California Code of Civil Procedure, beginning with § 1280, et seq.

(Emphasis in original.)
In May 1999, the decedent's brother, as personal representative of the decedent's estate, petitioned for a revocation of probate with respect to the May 14, 1996, will. The personal representative explained that the subject will had never been signed by the decedent. He averred that the signature affixed to the will was in fact forged by him after the decedent's death.
In January 2000, probate of the May 14, 1996, will was revoked by written order. The order provided that, due to the revocation, the decedent was considered to have died intestate and that all seven of his children were thus his sole heirs.
Once the forgery of the will was revealed, Peter questioned the validity of the aforementioned assignment of his interests to the appellants. In accord with the parties' settlement agreement, the appellants submitted the matter for resolution by binding arbitration in Orange County, California.
Peter filed a pro se response in the arbitration proceeding. In that response, he alleged fraud and/or mutual mistake with respect to the subject assignment. Peter primarily contended that he was fraudulently induced by the appellants to enter into the agreement. He claimed that the appellants, while knowing of the will forgery, exploited his belief that his father left a valid, probated will which disinherited him.
A final arbitration hearing ensued in August 2000. Peter, however, did not attend, despite having been properly noticed. Thus, based on the evidence presented in the arbitration tribunal, the arbitrator rejected Peter's claims and determined the assignment to be valid. On September 14, 2000, a written arbitration award in favor of the appellants was entered.
Afterwards, the appellants petitioned a California Superior Court for a written order confirming the arbitration award. A notice of hearing was personally served on Peter on October 18, 2000. The notice informed him that the matter was set to be heard on December 15, 2000. Peter appeared pro se at that hearing. Supplemental court transcripts indicate that Peter did not file any opposing documents in the case. Thus, the California court denied his request, made at the hearing, for a continuance to hire an attorney. The matter then proceeded. On December 28, 2000, the California court entered both an order confirming the arbitration award and a final judgment, which declared the parties' agreement to be valid and enforceable. No direct appeal was taken from either order.
In February 2001, the appellants filed an application in the probate court below, seeking recognition of the California judgment. Recognition, of course, would preclude Peter's receipt of his intestate interest in his father's estate. Peter thus opposed recognition of the California judgment, alleging that the appellants procured such by committing a fraud on the California Superior Court. He averred *160 that, when he assigned his interest in his father's estate, the appellants knew the May 14, 1996, will was a forgery. Peter also claimed that the California court did not have personal jurisdiction over him. For that reason, he argued that the California judgment was void and thus not entitled to full faith and credit in Florida.
A hearing on the appellants' application was held in the probate court. At that time, Peter presented the former personal representative's petition for revocation of probate and his deposition, which was submitted in the revocation proceeding. In both the petition and the deposition, the former personal representative asserted that some or all of the appellants may have known of the will forgery. The appellants, on the other hand, countered that they were responsible for originally discovering the will forgery and bringing the matter to light, long after the will was accepted for probate. They explained that the discovery was made purely by happenstance during the Kansas litigation involving the conservatorship of their grandmother. At that time, they noticed that the decedent's signature on the will was different from his signature as it appeared on certain conservatorship documents.
At the close of the hearing, the probate court announced that it was denying recognition of the California judgment, because "there's some question on the Court whether it appeared by fraud." On June 13, 2001, a written order was entered accordingly.
On appeal, the appellants contend the trial court erred in refusing to extend full faith and credit to the California judgment. As we concluded in Burchett, the unusual and suspicious circumstances of this case notwithstanding, we are compelled, as a matter of law, to agree with the appellants.
Courts in every jurisdiction are required to give judgments entered in sister states the full faith and credit of the law. Art. IV, § 1, U.S. Const.; 28 U.S.C. § 1738 (2001). Foreign judgments, however, may be challenged on grounds that the foreign court lacked either personal or subject matter jurisdiction. Milligan v. Wilson, 107 So.2d 773, 775 (Fla. 2d DCA 1958); see also Hinchee v. Golden Oak Bank, 540 So.2d 262, 263 (Fla. 2d DCA 1989) (addressing personal jurisdiction only). "Likewise, the validity of [a foreign] judgment may be challenged on grounds of extrinsic fraud." Hinchee, 540 So.2d at 263 (citing Haas v. Haas, 59 So.2d 640 (Fla.1952)). Regardless of the ground upon which the foreign judgment is challenged, however, "[t]he jurisdiction of the foreign court and the validity of the foreign judgment must be analyzed under the law of the foreign state." Id. (citing Trauger v. A.J. Spagnol Lumber Co., 442 So.2d 182 (Fla.1983), and Milligan).
In the instant case, the California court had both personal and subject matter jurisdiction when it entered the judgment at issue. California courts have personal jurisdiction over an individual who makes a general appearance in a case and who voluntarily submits to jurisdiction without challenging such. Torres v. Torres (In re Marriage of Torres), 62 Cal.App.4th 1367, 73 Cal.Rptr.2d 344, 353 (1998). California courts also obtain personal jurisdiction where a party has specifically agreed that a particular contractual arrangement will be governed by California law. Pedus Bldg. Servs., Inc. v. Allen, 96 Cal.App.4th 152, 116 Cal. Rptr.2d 542, 552 (2002); see also Berard Constr. Co. v. Mun. Court, 49 Cal.App.3d 710, 122 Cal.Rptr. 825, 832 (1975) (concluding that contractual agreement constituted consent to personal jurisdiction in California court). In the instant case, the record shows that Peter made a general appearance in the California Superior *161 Court and did not otherwise contest personal jurisdiction. Furthermore, he specifically agreed that California law would govern the parties' contractual arrangement. He thus expressly consented to the personal jurisdiction of the California court.
While personal jurisdiction can be conferred on a California court by consent, subject matter jurisdiction cannot be so conferred. Id. Nonetheless, subject matter jurisdictionwhich relates to the nature of a cause of action, see Greener v. Workers' Comp. Appeals Bd., 6 Cal.4th 1028, 25 Cal.Rptr.2d 539, 863 P.2d 784, 787 (1993) is conferred on a California court when the controversy involves a contract executed and performed in California, Janzen v. Workers' Comp. Appeals Bd., 61 Cal. App.4th 109, 71 Cal.Rptr.2d 260, 263-64 (1997). Here, the matter in controversy involved a settlement agreement that was executed and performed in California. Thus, the California Superior Court indisputably had subject matter jurisdiction of that cause.
Last, there is no showing on the instant record of extrinsic fraud. Peter claimed he was fraudulently induced by the appellants to enter into the assignment at issue. Such, however, was a matter to be resolved by the Orange County, California, arbitration tribunal and, ultimately, the California Superior Court. The issue in those proceedings was the validity and enforceability of the parties' agreement in light of Peter's fraud claims. Fraud that goes to the merits of a case constitutes intrinsic, not extrinsic, fraud. Hinchee, 540 So.2d at 264; see also DeClaire v. Yohanan, 453 So.2d 375, 380 (Fla.1984) (holding that filing of false financial affidavits in child support matter related to issue in controversy and thus constituted intrinsic fraud).
Extrinsic fraud, on the other hand, actually prevents a party from defending in an action, raising issues, or otherwise presenting his or her case. Cerniglia v. Cerniglia, 679 So.2d 1160, 1163 (Fla.1996); see also Hinchee, 540 So.2d at 264; Lefler v. Lefler, 776 So.2d 319, 321-23 (Fla. 4th DCA 2001); Lamb v. Leiter, 603 So.2d 632, 635 (Fla. 4th DCA 1992) (explaining that a husband who intimidates, threatens, or coerces his wife to prevent her from litigating child custody, alimony, and property division issues commits extrinsic fraud). Such has not been shown to be the case here. The will forgery, itself, and allegations that some or all of the appellants may have had some involvement in such conduct cast a pall on the issues herein. The instant record, however, reflects no evidence of any conduct on the part of the appellants that prevented Peter from appearing, defending, or otherwise objecting in either the arbitration or the California court proceeding. Therefore, as disconcerting as these circumstances are, this court is constrained by the law, as we were in Burchett, to conclude that the California judgment cannot be refused recognition on the basis of extrinsic fraud.
Because the record fails to demonstrate any legal basis for refusing recognition of the California judgment, the probate court's order denying the appellants' application in this instance is reversed and remanded. On remand, the probate court is directed to extend full faith and credit to the California judgment.
Reversed and remanded.
FULMER and WHATLEY, JJ., Concur.