COVINGTON, Judge.
The appellants challenge a probate court order that denies their application for the recognition of a Montana judgment. The judgment sought to be recognized approves the assignment of the appellants’ incapacitated sibling’s interest in their father’s Florida estate. We reverse.
The controversy herein arises- from the same basic facts as those underlying O’Keefe v. O’Keefe, 833 So.2d 157 (Fla. 2d DCA 2002). Specifically, on September 5, 1996, the decedent, Michael A. O’Keefe, an orthopedic surgeon, died from massive' injuries he suffered in a plane crash in Montana. At the time, the decedent was unmarried and a resident of Sarasota County. On September 27, 1996, his last will and testament dated May 14, 1996, was accepted for probate in the Circuit Court for Sarasota County. In accordance with the will, the decedent’s brother, Anthony D. O’Keefe, was appointed personal representative.
Thereafter, $250,000 of the decedent’s cash assets were placed in a trust pursuant to a pour-over provision of the will. Those 'proceeds were ultimately paid to the decedent’s girlfriend in accord with the terms of the will and the trust instrument. The remaining assets of the decedent’s estate were distributed to four of the decedent’s seven surviving adult children, Patrick O’Keefe, Samantha O’Keefe, Anthony M. O’Keefe, and Jennifer Bryan, who were named beneficiaries under the will. Those four children are also the appellants herein. The decedent’s remaining three children, Peter, Sally, and Molly O’Keefe, were specifically disinherited.
Three years later, in May 1999, the decedent’s brother, as personal representative of the decedent’s estate, petitioned for a revocation of probate with respect to the May 14, 1996, will. He explained that the subject will had never been signed by the decedent. He averred that the signature affixed to the will was in fact forged by him after the decedent’s death.
In July 1999, the probate court appointed Charla Burchett, the appellee herein, as guardian ad litem (GAL) for the decedent’s disinherited daughter, Sally. The appointment was made per the request of the personal representative in his petition for revocation of probate. However, Sally, too, sought the appointment of a GAL in a written pro se request, which was accompanied by an affidavit from her psychiatrist. Ultimately, a GAL was deemed necessary because Sally had been suffering from a severe mental disorder since birth and was thus incapacitated. She was in fact a resident of a state hospital in Montana.
*164 In January 2000, probate of the May 14, 1996, will was revoked by written order. The order provided that, due to the revocation, the decedent was considered to have died intestate and that all seven of his children had become his sole heirs. Subsequent written orders were then entered directing the appellants and the decedent’s former girlfriend to return estate assets previously distributed to them under the forged will. Many difficulties arose in recapturing those assets. The record before us does not indicate what, if any, success the probate court has had in overcoming those difficulties.
Shortly after the revocation of probate, appellant Patrick O’Keefe petitioned a Montana court to appoint him as conservator for his incapacitated sister, Sally. In June 2000, the Montana court so appointed Patrick. As Sally’s conservator, Patrick further petitioned the Montana court for approval of a proposed family settlement agreement. Pursuant to that agreement, Sally would unconditionally assign to the appellants any and all of her interest in the decedent’s intestate estate. The agreement also provided that the appellants would establish, in accord with Montana law, a special needs trust for Sally, so that she could remain on public assistance in Montana. The appellants promised to fund the trust with $50,000. That promise, however, was expressly contingent on the appellants’ success in certain Kansas litigation involving the estate of their paternal grandmother. In that case, the appellants, as the sole beneficiaries of their grandmother’s estate, were attempting to recover from the estate of the decedent herein whatever was left of $20 million he allegedly procured from his own mother by fraud.
During negotiations in Sally’s pending Montana conservatorship case, appellee Burchett, as Florida GAL for Sally, informed the appellants that she opposed the assignment of Sally’s, interest in her father’s estate. Although the value of the decedent’s estate had not yet been determined, Burchett calculated Sally’s interest in the decedent’s intestate estate as approximately $200,000. It was thus Bur-chett’s opinion that the appellants’ promise to fund a special needs trust with $50,000 in exchange for Sally’s $200,000 inheritance was unconscionable. Thereafter, Burchett’s involvement in the Montana conservatorship negotiations, and in the Montana case altogether, ceased.
Eventually, a special GAL, Michael Dwyer, was appointed by the Montana court to represent Sally’s interests in the Montana conservatorship case. At some point, Dwyer filed a written report recommending the assignment of Sally’s interest in the decedent’s estate.
In January 2001, the Montana court entered a final judgment approving Patrick’s assignment of Sally’s interest in the decedent’s Florida estate. The Montana judgment recited that, “Notice of the hearing on [Patrick’s Montana] Petition was timely, duly and properly given to all interested persons, specifically including Charla Burchett, Esq., the special guardian ad litem in Florida.... No objections to the Petition were filed by any interested person.” The Montana judgment also indicated that the decision of the Montana court was based on GAL Dwyer’s written report. According to the Montana court, Dwyer recommended the assignment, because the decedent’s intestate Florida estate “will likely result in no distribution to the Con-servatee because of the significant probability that said estate is insolvent.”
In May 2001, the appellants herein filed an amended application in the Florida probate case, seeking recognition of the Montana judgment. Burchett, as GAL for Sally, objected in writing to the request. At that time, Burchett contended that the *165 Montana court was without subject matter jurisdiction to approve the assignment of Sally’s interest in her father’s Florida estate.
On June 27, 2001, a hearing was held on the appellants’ application. At the hearing, counsel for the appellants conceded the possibility that, ultimately, the assignment could fail to benefit Sally. That is, in the event of no recovery in the Kansas litigation, the appellants would not be obligated to fund Sally’s special needs trust. Nonetheless, Patrick and the other appellants could possibly receive a windfall from the assignment of Sally’s interest in the decedent’s estate. Counsel explained, however, that the foregoing possibility would depend upon the actual value of the estate, and Sally’s proportionate share, at the conclusion of all litigation involving or relating to the estate and/or estate assets.
The foregoing notwithstanding, the appellants argued that the Montana judgment was entitled to full faith and credit in Florida. They claimed the Montana court had both personal jurisdiction of Sally as a lifelong Montana resident and subject matter jurisdiction of her personal property and how she might choose to dispose of it. They further asserted that Sally’s interests were fully protected and independently represented by GAL Dwyer in the Montana case. According to the appellants, Patrick’s interest as a co-beneficiary of the decedent’s Florida estate was disclosed to the Montana court and was in fact the reason a special Montana GAL was appointed for Sally.
Burchett, on the other hand, argued that the Montana judgment was not entitled to full faith and credit. She contended that Patrick and the other appellants fraudulently procured the subject assignment and otherwise engaged in self-dealing to circumvent the Florida probate proceedings, once probate of the forged will was revoked. She submitted that, based upon the deposition of the decedent’s brother in the probate revocation proceeding, two of the appellants — if not all four- — -may possibly have known that the May 14, 1996, will was a forgery at the time it was offered for probate. Burchett also argued that the Montana court was without subject matter jurisdiction to the extent that its judgment structured an agreement to alter the disposition of a Florida decedent’s estate. The foregoing arguments notwithstanding, Burchett did not dispute that she did not register an objection or otherwise appear in the Montana proceeding, despite having been duly noticed thereof.
At the conclusion of the hearing, the trial court announced that it was denying the appellants’ application for recognition of the Montana judgment. The trial court found that: (1) Patrick was acting in his own interests in procuring the assignment of Sally’s inheritance and was thus guilty of fraud and self-dealing; and (2) the Montana court was without subject matter jurisdiction to enter a judgment that affected the disposition of property in a Florida decedent’s estate. A written order was entered accordingly.
On appeal, the appellants contend the trial court erred in refusing to extend full faith and credit to the Montana judgment. As unusual and unfortunate' — and in fact suspicious — as the circumstances herein may be, we must agree with the appellants’ contention, strictly as a matter of law.
Courts in every jurisdiction are required to give judgments entered in sister states the full faith and credit of the law. Art. IV, § 1, U.S. Const.; 28 U.S.C. § 1738 (2001). Foreign judgments, however, may be challenged on grounds that the foreign court lacked either personal or subject matter jurisdiction. Milligan v. Wilson, 107 So.2d 773, 775 (Fla. 2d DCA 1958); see also Hinchee v. Golden Oak Bank, 540 So.2d 262, 263 (Fla. 2d DCA *166 1989) (addressing personal jurisdiction only). “Likewise, the validity of [a foreign] judgment may be challenged on grounds of extrinsic fraud.” Hinchee, 540 So.2d at 263 (citing Haas v. Haas, 59 So.2d 640 (Fla.1952)). Regardless of the ground upon which the foreign judgment is challenged, however, “[t]he jurisdiction of the foreign court and the validity of the foreign judgment must be analyzed under the law of the foreign state.” Id. (citing Trauger v. A.J. Spagnol Lumber Co., 442 So.2d 182 (Fla.1983), and Milligan).
In the instant case, the Montana court indisputably had both personal and subject matter jurisdiction when it entered the judgment at issue. Under Montana law, Montana courts have general personal jurisdiction over all persons found within the state of Montana. M.R.Civ.P. 4B(1); see also Threlkeld v. Colorado, 303 Mont. 432, 16 P.3d 359 (2000); Simmons Oil Corp. v. Holly Corp., 244 Mont. 75, 796 P.2d 189, 194 (1990). Sally has been a lifelong resident of Montana and resides there in a state hospital. The Montana judgment is thus unassailable on grounds of personal jurisdiction.
Further, Montana courts have subject matter jurisdiction of guardianships and conservatorships involving incapacitated Montana residents in need of protection. See § 72-5-306, Mont. Stat. (2001) (authorizing court-appointed guardians of incapacitated persons); § 72-5-409 (authorizing appointment of conservators for incapacitated persons); In re Estate of Bayers, 295 Mont. 89, 983 P.2d 339 (1999); In re Guardianship & Conservatorship of Swandal, 210 Mont. 167, 681 P.2d 701 (1984); see also Beverly Beach Props., Inc. v. Nelson, 68 So.2d 604, 608 (Fla.1953) (requiring the extension of full faith and credit to a California judgment and acknowledging the right of a California court under California law to appoint a guardian for a California resident).
In this instance, it is undisputed that Sally is an incapacitated Montana resident. The Montana court thus appointed Patrick as her conservator. When Patrick brought the agreement at issue before the Montana court, a separate and presumably independent Montana guardian was duly appointed to represent Sally’s interests. Relying on the Montana GAL’s report and ultimate recommendation, the Montana court entered the judgment at issue, which approved the subject agreement. The agreement merely directs an assignment of Sally’s interest in her father’s intestate estate upon the disposition of that interest in accord with Florida law. The agreement does not otherwise serve to alter Florida’s intestacy laws. The Montana judgment is thus unassailable for lack of subject matter jurisdiction.
Last, there is no showing on the instant record of extrinsic fraud. In this case, Burchett argues that Patrick, as conservator for Sally in Montana, engaged in fraud and self-dealing in proposing and securing court approval of an assignment that inured to his own benefit rather than that of his conservatee. Beyond setting forth the questionable nature of the overall circumstances — which are indeed very suspicious — Burchett failed to present any conclusive evidence in support of her claim in the probate court. Even if she had, however, such would be of no consequence here. The integrity of the conservator and the merits of his petition were matters to be resolved only by the Montana court in light of the evidence presented in that forum. Fraud that goes to the merits of a case constitutes intrinsic, not extrinsic, fraud. Hinchee, 540 So.2d at 264; see also DeClaire v. Yohanan, 453 So.2d 375, 380 (Fla.1984) (holding that filing of false financial affidavits in child support matter related to issue in controversy and thus constituted intrinsic fraud).
*167 Extrinsic fraud, on the other hand, actually prevents a party from defending in an action, raising issues, or otherwise presenting his or her case. Cerniglia v. Cerniglia, 679 So.2d 1160, 1163 (Fla.1996); see also Hinchee, 540 So.2d at 264; Lefler v. Lefler, 776 So.2d 319, 321-23 (Fla. 4th DCA 2001); Lamb v. Leiter, 603 So.2d 632, 635 (Fla. 4th DCA 1992) (explaining that a husband who intimidates, threatens, or coerces his wife to prevent her from litigating child custody, alimony, and property division issues commits extrinsic fraud). Such has not been demonstrated here. This court acknowledges that, in viewing this case against the backdrop of such reprehensible conduct as will forgery, it is entirely possible that some extrinsic fraud occurred at some point. The instant record, however, reveals no evidence of any conduct on the part of Patrick or the other appellants that prevented any party or interested person from appearing, defending, or otherwise objecting in the Montana conservatorship case. Therefore, as dubious as the circumstances herein appear to be, this court is constrained by the law to conclude that the Montana judgment cannot be refused recognition on the basis of extrinsic fraud.
Accordingly, because the record fails to demonstrate any legal basis for refusing recognition of the Montana judgment, the probate court’s order denying the appellants’ application in this instance is reversed and remanded. On remand, the probate court is directed to extend full faith and credit to the Montana judgment.
Reversed and remanded.
PARKER and CASANUEVA, JJ„ Concur.