[No. A072165. First Dist., Div. Three. June 19, 1996.]

BENEFIT ASSOCIATION INTERNATIONAL, INC., et al., Petitioners, v. THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent; HERSZ DRACH, Real Party in Interest.

## COUNSEL

Norman M. Owen for Petitioners.

No appearance for Respondent.

Hoffman & Lazear, H. Tim Hoffman and Arthur M. Lazear for Real Party in Interest.

## OPINION

**PARRILLI, J.**—This case concerns what "minimum contacts" are needed for in personam jurisdiction over an insurer that sells "medical benefits"

policies to foreigners traveling in California. A Venezuelan insured has filed an action in California against two Mississippi companies. Neither the insurance company issuing the policy, which has offices in Jackson, Mississippi and Miami, Florida, nor its servicing agent, whose only office is in Mississippi, conducts business in California. The suit is over a contract for medical insurance obtained through Venezuelan representatives of a Turks and Caicos Island agency. The contract contains a forum-selection clause conferring exclusive jurisdiction on the courts of Mississippi. The litigation is connected to California only because the insured suffered a stroke and was hospitalized in California and incurred bills the companies have refused to pay. We conclude the court erred in taking jurisdiction over the insurance company and its servicing agent.

### Facts and Procedures

In August 1994, Hersz Drach, a Venezuelan citizen, was vacationing in Miami, Florida, planning to return briefly to Venezuela and then go to California to visit family. On August 15, 1994, for an annual premium of $2,850 each, he and his wife purchased medical coverage ($2,000 deductible, $1 million annual per person limit) from Benefit Association International, Inc. (BAI). The policy, issued to Drach in Spanish and English, was available only to persons who were not permanent residents of the United States. The 14-page policy provided various travel-related services, such as worldwide medical information and assistance, emergency evacuation, repatriation of mortal remains, information about contacting embassies, overseas claims assistance, emergency family travel arrangements and return home of minor children left unattended because of a medical emergency. The policy provided that "[t]he insured confers exclusive jurisdiction upon the courts of the State of Mississippi, USA, for determination of any rights to the exclusion of any other jurisdiction."

BAI is a Mississippi corporation with offices only in Jackson, Mississippi, and Miami, Florida.[1] It issues policies of insurance only to individuals residing outside of the United States and does no business in California. Morgan-White Ltd. (Morgan-White), servicing agent on the policy, is a Mississippi corporation with its only office in Jackson, Mississippi. It also does no business in California.

Drach purchased his policy through Assist-Med International Ltd. (Assist-Med), a Turks and Caicos Island corporation with representatives in Venezuela. At the time of purchase, insurance agents represented to him that the

---

[1]The record does not reveal whether Drach learned of or contacted BAI while in Miami or whether the Miami conjunction was only coincidental.

policy would cover any medical costs he might incur while he was in California.

Drach came to California in late 1994 and on or about February 13, 1995, became disabled by a sudden massive stroke. He remained hospitalized in Alameda County until October 1995.[2] Following his stroke, members of his family and representatives of Alta Bates Hospital attempted to collect benefits under the policy. BAI denied the claim, rescinded the policy and returned the premium, asserting Drach had failed to disclose preexisting hypertension.

On August 4, 1995, Drach filed an action in Alameda County Superior Court against BAI, Morgan-White, and others, alleging breach of the insurance contract, bad faith, fraud, intentional infliction of emotional distress and violation of the Racketeer Influenced and Corrupt Organizations Act (RICO). BAI and Morgan-White moved to quash service of summons on the ground the court lacked personal jurisdiction over them. After hearing, the court denied the motion. This petition followed. (Code Civ. Proc., § 418.10, subd. (c).)[3]

### Minimum Contacts

"California's long-arm statute provides that it can exercise jurisdiction 'on any basis not inconsistent with the Constitution of this state or of the United States.' (Code Civ. Proc., § 410.10.) . . . [¶] As the United States Supreme Court noted in *International Shoe* [*Internat. Shoe Co.* v. *Washington* (1945) 326 U.S. 310 (90 L.Ed. 95, 66 S.Ct. 154, 161 A.L.R. 1057)], the minimum contacts test is not 'mechanical or quantitative,' but depends upon the 'quality and nature' of the defendant's activities within the state. (*International Shoe, supra,* 326 U.S. [310] at p. 319 . . . .) If a nonresident corporation's activities are sufficiently wide-ranging, systematic, and continuous, it may be subject to jurisdiction within the state on a cause of action unrelated to those activities. [Citations.] Where the activity is less extensive, the cause of action 'must arise out of or be connected with the defendant's forum-related activity.' [Citations.]" (*Asahi Metal Industry Co., Ltd.* v. *Superior Court* (1985) 39 Cal.3d 35, 42 [216 Cal.Rptr. 385, 702 P.2d 543].)

---

[2] The record does not reveal the date of Drach's return to Venezuela, but it appears he returned in mid-October. His declaration, signed under penalty of perjury on October 13, 1995, in Oakland, California, stated: "I have remained hospitalized in Alameda County since [the time of my stroke]." BAI and Morgan-White, in their reply to Drach's return to petition, improperly "verified" on information and belief, state that medical records show Drach had received treatment at a Caracas hospital since October 18, 1995. (See *Star Motor Imports, Inc.* v. *Superior Court* (1979) 88 Cal.App.3d 201 [151 Cal.Rptr. 721].)

[3] All statutory references are to the Code of Civil Procedure.

In deciding the "minimum contacts" issue, "the important question is whether the nonresident defendant has 'purposefully availed' itself of the benefits of an economic market in the forum state. [Citation.]" (*Southeastern Express Systems* v. *Southern Guaranty Ins. Co.* (1995) 34 Cal.App.4th 1, 10 [40 Cal.Rptr.2d 216] (*Southeastern Express*).) " 'Purposeful availment' means 'an action of the defendant purposefully directed toward the forum State.' [Citation.] But 'purposeful availment' may be established even if the nonresident defendant maintains no offices, property, or employees in the forum. '[I]f a foreign corporation purposefully avails itself of the benefits of an economic market in the forum State, it may subject itself to the State's *in personam* jurisdiction even if it has no physical presence in the State.' [Citations.] A nonresident defendant who has purposefully directed its activities toward the forum state may not defeat personal jurisdiction absent compelling evidence that jurisdiction would be unreasonable. [Citations.]" (*Id.* at p. 6, italics in original.)

In *A.I.U. Ins. Co.* v. *Superior Court* (1986) 177 Cal.App.3d 281, 287-290 [222 Cal.Rptr. 880] (*A.I.U.*), we noted that "minimum contacts" decisions concerning insurance contracts were scarce, and we summarized the decisions in *Travelers Health Assn.* v. *Virginia* (1950) 339 U.S. 643 [94 L.Ed. 1154, 70 S.Ct. 927] (Virginia had jurisdiction over a Nebraska mail-order health insurer); *McGee* v. *International Life Ins. Co.* (1957) 355 U.S. 220 [2 L.Ed.2d 223, 78 S.Ct. 199] (California had jurisdiction over a Texas company that received life insurance premiums from a California resident and sent a reinsurance approval form to him); and *McClanahan* v. *Trans-America Ins. Co.* (1957) 149 Cal.App.2d 171 [307 P.2d 1023] (California had jurisdiction over an Alabama company whose automobile policy covered Colombia residents traveling in the United States). In *A.I.U.*, we reversed an order quashing service on a foreign insurance company whose policy covered Shell Oil Company's worldwide assets and activities. We noted that although the insurance company was not obligated to send investigators or employ attorneys to defend actions in California, it had every reason to expect California losses and it derived substantial economic benefit from insuring against such losses. (*A.I.U.*, *supra*, at pp. 291-292.)

Division One of this court recently permitted jurisdiction over a foreign insurer with no direct contact with California. In *Southeastern Express*, *supra*, 34 Cal.App.4th 1, a Georgia insurance company issued a commercial liability policy to a Georgia partnership engaged in selling and maintaining computers used by auto parts stores in many states, including California. The partnership's computer supplier, located in California, brought an action against the partnership for making and using illegal copies of its software

and manuals. After the insurer refused to pay for defending the copyright action, the insured sued it in California for breach of contract and bad faith insurance practices. Division One reversed a trial court order quashing service of process. (*Id.* at pp. 3-5, 11.)

*Southeastern Express* noted that the insurer provided nationwide coverage and collected premiums on that basis, knowing its insured faced potential business liability in California. "We believe it neither unreasonable nor unfair to require an insurer who has assumed the responsibility of defending its insured in California to defend itself when it refuses its insured's defense in a suit brought in California. We recognize that an insurer's defense of a bad faith action may necessitate inconveniences exceeding those attending the defense of an insured, since evidence and witnesses from the insurer's home office may have to be produced in a distant forum to refute the plaintiff's allegation of unfair claims handling practices. But a nonresident defendant's inconvenience rarely achieves constitutional magnitude, and fails to do so here. [Citation.] Considerations of convenience may usually be accommodated through a forum non conveniens dismissal or stay. [Citations.]" (34 Cal.App.4th at pp. 6-7, fn. omitted.)

*Southeastern Express* also observed that "California has a significant interest in assuring that injuries and losses suffered in the state are afforded insurance coverage. [Citation.] California's interests in encouraging fair claims handling practices and holding insurers answerable for bad faith practices are also significant, and would be compromised were we to deny personal jurisdiction over nonresident insurers in bad faith actions alleging wrongful refusal *to defend* California losses." (34 Cal.App.4th at p. 7, italics added.) The underlying premise of *Southern Express* was that the insurer had agreed to defend its insured in California.

The superior court here has gone one step beyond *Southeastern Express* because BAI has agreed only to pay medical expenses, not to provide a legal defense for Drach in California. Drach may be correct that an insurance company's commitment to pay a business's legal fees incurred in California is no greater justification for jurisdiction than a company's commitment to pay for medical services for a foreign visitor traveling here. However, the problem with California exercising jurisdiction here is Drach's failure to present any evidence that BAI has been involved with California or "purposely availed" itself of California's economic market.

The only evidence Drach presented connecting BAI with California is his declaration that, when he purchased the policy, BAI's agent told him the

policy would cover any medical costs he might incur while in California. Drach presented no evidence that BAI had ever before insured a person traveling to California, paid a California medical bill or otherwise participated in commerce in California. There is nothing in the record that suggests BAI advertised or otherwise marketed its policy in settings that targeted California travelers. We conclude that insuring two foreign citizens, knowing they might travel in California, did not constitute purposefully availing itself of the benefits of the economic market in California.

BAI's situation is akin to that of the east coast regional insurer in *Hunt* v. *Erie Ins. Group* (9th Cir. 1984) 728 F.2d 1244, 1245-1247. In *Hunt*, the auto policyholder's passenger, en route to California, was injured in Colorado. The passenger was then transferred to a rehabilitation center in California, where she received public assistance for her medical care and sued the insurance company. The situation is similar also to other cases, most involving automobile insurance, where plaintiffs' conduct, not defendants', established the connection with the forum state. (See, e.g., *Petrik* v. *Public Service Mut. Ins. Co.* (9th Cir. 1989) 879 F.2d 682; *Davis* v. *American Family Mut. Ins. Co.* (9th Cir. 1988) 861 F.2d 1159, 1161-1162; *Rambo* v. *American Southern Ins. Co.* (10th Cir. 1988) 839 F.2d 1415, 1420-1421. But see *Farmers Ins. Ex.* v. *Portage La Prairie Mut. Ins. Co.* (9th Cir. 1990) 907 F.2d 911, 914; *Rossman* v. *State Farm Mut. Auto. Ins. Co.* (4th Cir. 1987) 832 F.2d 282, 286.)

Our conclusion is bolstered by balancing the conveniences and California's interest in the proceeding, as a court may do in deciding the jurisdiction question. (*Cornelison* v. *Chaney* (1976) 16 Cal.3d 143, 150-151 [127 Cal.Rptr. 352, 545 P.2d 264].) The convenience of trying the case in Mississippi, where insurance policies were written and claim files maintained, outweighs any inconvenience involved in bringing the medical evidence to Mississippi. California's interest in the action is minimal because Drach is not a California resident.

Our conclusion is further supported by Drach's contractual agreement to Mississippi's jurisdiction over the matter. Although a forum-selection clause does not, ipso facto, defeat jurisdiction, it is one factor considered by a court when deciding whether to stay or dismiss an action under the doctrine of forum non conveniens. (*Smith, Valentino & Smith, Inc.* v. *Superior Court* (1976) 17 Cal.3d 491, 494-496 [131 Cal.Rptr. 374, 551 P.2d 1206]; *Cal-State Business Products & Services, Inc.* v. *Ricoh* (1993) 12 Cal.App.4th 1666, 1682-1683 [16 Cal.Rptr.2d 417]; *Lifeco Services Corp.* v. *Superior Court* (1990) 222 Cal.App.3d 331, 334-335 [271 Cal.Rptr. 385]; *Furda* v. *Superior Court* (1984) 161 Cal.App.3d 418, 423-427 [207 Cal.Rptr. 646].)

Although BAI's motion was designated a motion "to quash service of summons" and asserted only lack of jurisdiction, not forum non conveniens, BAI asked the court to stay or dismiss the action and referred to the convenience of witnesses and to the forum-selection clause. While it was not formally called a forum non conveniens motion, it was cast as one. (Cf. *Martin* v. *Detroit Lions, Inc.* (1973) 32 Cal.App.3d 472, 476-477 [108 Cal.Rptr. 23].) Drach's response below did not deny knowledge of the forum-selection clause, challenge it on the ground it was part of a contract of adhesion, or argue that enforcement would be unreasonable. Instead, Drach argued that BAI had the burden of demonstrating notice of the clause and absence of fraud, undue influence or other factors which might defeat enforcement.

Drach is wrong about the burden of proof. ■ A forum-selection clause is prima facie valid and is to be enforced unless the resisting party shows enforcement would be unreasonable under the circumstances. (*The Bremen* v. *Zapata Off-Shore Co.* (1971) 407 U.S. 1, 10 [32 L.Ed.2d 513, 520-521, 92 S.Ct. 1907]; *Appalachian Ins. Company* v. *Superior Court* (1984) 162 Cal.App.3d 427, 439 [208 Cal.Rptr. 627].) ■ BAI met its burden of proof by showing the existence of a forum-selection clause. Drach failed to present any justification for ignoring the clause and the court erred in doing so.

### Disposition

Let a peremptory writ of mandate issue directing the Alameda County Superior Court to vacate its order denying the motion to quash and to issue a new order granting the motion.

Corrigan, Acting P. J., and McGuiness, J.,* concurred.

---

*Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.