Filed 1/25/23  Semanick v. State Automobile Mutual Ins. Cos. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| BRITTNEY SEMANICK, | B316340 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County Super. Ct. No. 20STCV20627) |
| STATE AUTOMOBILE MUTUAL INSURANCE COMPANIES, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lia R. Martin, Judge.  Affirmed.

Parris Law Firm, R. Rex Parris, Alexander Wheeler, Jason P. Fowler, Jonathan W. Douglass and Mark G. Shihady for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Julian J. Pardini and W. Eric Blumhardt for Defendant and Respondent.

Brittney Semanick (appellant) appeals from a judgment of dismissal with prejudice entered after the trial court granted respondent State Automobile Mututal Insurance Companies' (respondent) motion to quash appellant's summons and complaint on the ground that the trial court lacked personal jurisdiction over respondent. We affirm the judgment.

## FACTUAL BACKGROUND

On March 13, 2018, respondent issued a "Personal Auto Policy" (policy) to Patty and Daniel Semanick, who were residents of Indiana. The policy was in effect from March 13, 2018, to September 13, 2018, and provided uninsured and underinsured motorist coverage.

The policy provided coverage to the Semanicks as well as any "family member," which the policy defined as "a person related to [the Semanicks] by blood, marriage or adoption who is a resident of [the Semanick's] household." The policy was issued through an Indiana agent with the understanding that all of the vehicles insured under the policy were registered and principally garaged in Indiana. The policy applied to accidents and losses occurring "[w]ithin the policy territory." The policy territory included the United States of America, its territories, or possessions; Puerto Rico; and Canada.

Appellant is the daughter of the policyholders, Patty and Daniel Semanick. Although appellant is not a named insured, she is listed on the policy as a covered driver.

On July 4, 2018, appellant was injured in an accident in West Hollywood, California. Appellant was a pedestrian crossing Santa Monica Boulevard when she was hit by a drunk driver. Appellant sustained severe injuries and incurred substantial damages.

Appellant made a claim against the responsible driver, and he tendered his $15,000 policy limit. However, the policy limit was insufficient to cover appellant's damages, and she submitted a claim to respondent under the underinsured motorist provisions of her parents' policy.

Respondent retained a California law firm to investigate appellant's claim that she was entitled to benefits under her parents' policy as a "resident" of her parents' household. The attorneys conducted discovery and performed an examination of appellant under oath in their Los Angeles office on September 28, 2018. Appellant testified that her legal address, found on her driver's license, was her parents' home in Highland, Indiana. However, she stated that her current residence was in Los Angeles, California, where she had moved approximately three years earlier. Appellant testified that she traveled back and forth between the two addresses. Following the completion of its investigation, respondent denied appellant's claim on the ground that, at the time of the accident, appellant was not a resident of her parents' household and therefore did not fall within the scope of the policy's definitions of "family member" or "insured."

## PROCEDURAL HISTORY

Appellant filed a lawsuit against respondent in the superior court for Los Angeles County on June 1, 2020. Appellant's complaint asserted two causes of action: (1) breach of contract for failure to pay benefits under the policy and (2) breach of the implied covenant of good faith and fair dealing. The complaint also included a claim for declaratory relief, seeking a finding that appellant was a resident relative under the policy. Appellant

personally served respondent with the summons and complaint at its offices at 518 East Broad Street in Columbus, Ohio.[1]

On October 21, 2020, respondent moved to quash service of the summons and complaint. Respondent argued that it was a nonresident with no connection to California. Respondent asserted that it does not maintain offices in California, conducts no business, marketing, or advertising in California, and does not sell insurance policies in California. Further, it derives no revenue in California, holds no investments, commercial loans, real property, or bank accounts in California. Respondent had not sought or received approval from California's Department of Insurance to issue or deliver its insurance products in California. Respondent argued that it did not have sufficient minimum contacts with California to support the exercise of personal jurisdiction over respondent in California. Specifically, it did not have sufficiently continuous or substantial contacts with California to support general jurisdiction, and it did not purposefully avail itself of California's forum benefits to support specific jurisdiction. Appellant opposed the motion, arguing that respondent's policy coverage territory covered accidents occurring anywhere in the United States, including California. Appellant also argued that respondent's postaccident investigation, utilizing the services of a California law firm, subjected respondent to jurisdiction in California.

On August 31, 2021, the trial court heard respondent's motion to quash. Following oral argument, the trial court

---

[1] Respondent is a corporation organized under the laws of Ohio with its principal place of business in Columbus, Ohio. Its claims department is located at its corporate headquarters in Columbus, and it does not maintain any offices in California.

4

granted the motion. The trial court found that appellant failed to establish that respondent engaged in any significant activities in California. The court noted, "There was no lawsuit filed in California over the accident in which plaintiff was injured. Defendant was not involved in plaintiff's settlement with the driver. The only connection to California is that defendant responded to plaintiff's claim, using a California law firm because plaintiff was in California at the time she made the claim. That is not sufficient to support personal jurisdiction."

Judgment was entered on October 4, 2021. Appellant filed her notice of appeal on October 29, 2021.

## DISCUSSION

### I. Standard of review

The parties agree that the sole issue presented by this appeal is whether the trial court may exercise personal jurisdiction over respondent in in connection with the coverage dispute between the parties.

On appeal from a judgment quashing service of a summons and complaint based on lack of personal jurisdiction, we review the trial court's legal conclusions de novo. (*Snowney v. Harrah's Entertainment, Inc.* (2005) 35 Cal.4th 1054, 1062.) "When no conflict in the evidence exists . . . , the question of jurisdiction is purely one of law and the reviewing court engages in an independent review of the record." (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 449.) Where relevant facts are disputed, the substantial evidence standard applies. (*Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 272 (*Pavlovich*).)

5

## II. Applicable law regarding jurisdiction

Code of Civil Procedure section 410.10 permits a court in California to exercise personal jurisdiction over a defendant "on any basis not inconsistent with the Constitution of this state or of the United States." Accordingly, California courts may rely on federal court opinions to determine whether an exercise of personal jurisdiction will violate due process. (See, e.g., *Cornelison v. Chaney* (1976) 16 Cal.3d 143, 147 (*Cornelison*) [relying on U.S. Supreme Court decisions when analyzing personal jurisdiction].)

The exercise of personal jurisdiction is constitutionally permissible if the defendant purposefully established "'minimum contacts'" with the forum state to make jurisdiction reasonable. (*Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 474, quoting *International Shoe Co. v. Washington* (1945) 326 U.S. 310, 316.) "Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." (*Burger King*, at p. 475.) "'The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.'" (*Id.* at p. 474.) "Under the minimum contacts test, 'an essential criterion in all cases is whether the "quality and nature" of the defendant's activity is such that it is "reasonable" and "fair" to require him to conduct his defense in that State.'" (*Pavlovich, supra*, 29 Cal.4th at p. 268.)

"'Personal jurisdiction may be either general or specific.'" (*Pavlovich, supra*, 29 Cal.4th at pp. 268-269.) General jurisdiction applies where the defendant's activities in the forum state are "'extensive or wide-ranging'" or "'substantial . . . continuous and systematic'" in a manner that warrants

6

jurisdiction. (*Cornelison, supra*, 16 Cal.3d at p. 147.) Appellant makes no argument that respondent's contacts with California are so extensive or continuous that general jurisdiction is proper.

If a defendant's activities in the forum are not so pervasive as to justify general jurisdiction over him, a state may still have specific jurisdiction over a defendant depending upon "the quality and nature of his activity in the forum in relation to the particular cause of action." (*Cornelison, supra*, 16 Cal.3d at p. 148.) Such jurisdiction is also referred to as specific or "case-linked jurisdiction." (*Rivelli v. Hemm* (2021) 67 Cal.App.5th 380, 392 (*Rivelli*).) When determining whether specific jurisdiction exists, a court must consider the ""relationship among the defendant, the forum, and the litigation.""" (*Pavlovich, supra*, 29 Cal.4th at p. 269.) A court may exercise specific jurisdiction if three requirements are met: "(1) 'the defendant has purposefully availed himself or herself of forum benefits' [citation]; (2) 'the "controversy is related to or 'arises out of' [the] defendant's contacts with the forum'" [citation]; and (3) "'the assertion of personal jurisdiction would comport with 'fair play and substantial justice'"" [citations]." (*Ibid.*) "The case-linked jurisdictional analysis is intensely fact-specific." (*Rivelli*, at p. 392.)

### III. Specific jurisdiction as to respondent

In determining whether California may constitutionally assert specific jurisdiction over respondent in this matter, we analyze the three applicable elements set forth above. We conclude that the exercise of jurisdiction over respondent in this matter does not comport with the constitutional principles expressed in the relevant case law.

7

### A. *Purposeful availment*

To assert specific jurisdiction over respondent, we first analyze whether respondent has purposefully availed itself of the forum's benefits. "'The purposeful availment inquiry . . . focuses on the defendant's intentionality.'" (*Pavlovich, supra*, 29 Cal.4th at p. 269.) This prong is only satisfied when "the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction." (*Ibid.*)

The facts of this case do not show that respondent intentionally availed itself of the benefits of the state by conducting activities in this state. Respondent maintains no offices in California, does not advertise its insurance policies in California, and does not issue insurance policies in California. The policy at issue was issued to appellant's parents in Indiana, where appellant claims to be a resident. In short, there is no evidence that respondent has ever intentionally conducted business in California. As the trial court pointed out, the only apparent connection between respondent and the State of California is that appellant was in California at the time she made the claim.[2]

---

[2] Generally, a foreign insurance company does not subject itself to specific jurisdiction in California by virtue of its insured simply moving to this state. (*Elkman v. National States Ins. Co.* (2009) 173 Cal.App.4th 1305, 1321 ["It was the unilateral decisions of Elkman and other insureds to relocate to California which caused [the foreign insurance company] to accept payments from this state and to process and pay claims for services rendered in this state. These circumstances do not support a finding [the insurance company] purposefully availed

Appellant argues that a nonresident insurance company may be subjected to specific jurisdiction in California when (1) the insurance company provides policy coverage that extends to the forum state and (2) an insured event results in litigation there. In making this assertion, appellant relies on several cases, including *Southeastern Express Systems v. Southern Guaranty Ins. Co.* (1995) 34 Cal.App.4th 1 (*Southeastern*). *Southeastern* involved an insurance company that provided commercial liability coverage to an interstate business. The policy covered injuries arising from offenses committed in California. (*Id.* at p. 4.) The respondent insurance company was a corporation organized under the laws of Georgia and maintained its principal place of business in Georgia. The insured appellant was a business organized under the laws of Georgia selling and servicing computers throughout many states, including California. When the appellant was sued in the United States District Court for the Northern District of California, it tendered its defense to the insurance company, which refused to pay for the appellant's cost of defense. (*Id.* at pp. 4-5.) The appellant then brought the underlying action for breach of contract and bad faith insurance in state court in California. The insurance company moved to quash service, and the motion was granted.

The *Southeastern* court reversed, noting that "the exercise of personal jurisdiction is not dictated by the place of contracting or performance, but is guided by a realistic approach which considers the contractual relationship in its totality, including the terms of the contract and the contemplated future consequences of the obligations assumed." (*Southeastern, supra,*

---

itself of forum benefits so as to make it subject to specific jurisdiction in California."].)

34 Cal.App.4th at p. 6.)  The *Southeastern* court evaluated the contract at issue, pointing out that it obligated the respondent insurer to "defend and indemnify advertising injuries for offenses committed by appellants in the 'coverage territory,'" which was defined as the United States, Puerto Rico and Canada.  (*Ibid.*) The *Southeastern* court held that it was "neither unreasonable nor unfair to require an insurer who has assumed the responsibility of defending its insured in California to defend itself when it refuses its insured's defense in a suit brought in California."  (*Id.* at pp. 6-7.)  The *Southeastern* court refused to "categorically deny an insured a local forum to dispute its insurer's refusal to defend an action pending in the state."  (*Id.* at p. 8.)

Southeastern* is distinguishable in several important ways. First, the contract between the parties specifically contemplated that the insured would be engaging in interstate commercial activity, and the contract provided commercial liability insurance for this interstate activity.  As the *Southeastern* court noted, it was foreseeable that "the insurers would be called into a foreign forum, given the nationwide distribution of the insured's products which the insurers were charged with knowing about." (*Southeastern, supra*, 34 Cal.App.4th at p. 11.)  Under those circumstances, "'insurers cannot be said to have failed to avail themselves, in a conscious and deliberate manner, of the benefits of doing business in those fora in which the insured manufacturer distributes its products.'"  (*Ibid.*)  In contrast to the commercial liability policy at issue in *Southeastern,* in which the insurance company knowingly insured interstate business activity, the respondent here did not knowingly insure interstate business activity.  Instead, it provided coverage to Indiana residents for cars principally garaged in Indiana.

10

Second, the coverage lawsuit in *Southeastern* arose out of a lawsuit pending in California against the insureds. (*Southeastern, supra*, 34 Cal.App.4th at pp. 6-8.)  The *Southeastern* court's primary focus was that the insurance company had denied "a duty to defend alleged losses arising here." (*Id*. at p. 4.)  The insureds had been sued in California, and the *Southeastern* court felt it would be unfair to "categorically deny an insured a local forum to dispute its insurer's refusal to defend an action pending in the state." (*Id*. at p. 8.)  Here, in contrast, there is no action pending in this state involving appellant, thus respondent has no obligation to defend appellant in this state.  Consequently, this element of fairness to the insured is not present.

The *Southeastern* court relied on *McClanahan v. Trans-America Ins. Co.* (1957) 149 Cal.App.2d 171 (*McClanahan*), which appellant also cites in support of her position in this appeal.  In *McClanahan*, residents of Washington recovered a judgment in California state court against the insurance company's insureds, who were residents of Colombia, arising out of an automobile collision in California.  The foreign defendant insurance company failed to pay the judgment, resulting in the action against the insurance company by the third party creditors of the insureds. (*Id*. at pp. 171-172.)  The *McClanahan* court noted that "it is apparent that no hard and fast rule can be adopted which would apply to all cases[;] it is obvious that the final determination must be predicated upon the peculiar facts of each individual case." (*Id*. at p. 172.)  After analyzing the specific facts of the case, the *McClanahan* court determined that jurisdiction was proper.  The *McClanahan* court noted that it is "the combination of local activities conducted by the foreign corporation, the manner, nature and extent thereof, which is determinative" of

11

the jurisdictional question.  (*Id.* at p. 172.)  In that case, the insurance company had engaged an adjustment service agency located in California to investigate the claims, settled one claim, defended another through trial, and made several offers of settlement.  (*Id.* at p. 173.)  In addition to preparing and defending the case brought by the plaintiffs, there was evidence that the insurance company "ha[d] adjusted and defended numerous cases in California."  (*Id.* at p. 174.)

Respondent's activities in California do not rise to the same level of purposeful availment as existed in *McClanahan.*  As there was no lawsuit arising out of appellant's accident in California, respondent was not required to defend a lawsuit or negotiate a settlement here.  Nor was there any evidence that respondent has done so in the past.  Appellant points out that respondent hired a local law firm in California to investigate her claim that she was a resident of Indiana and invoked California law to deny coverage.  However, the investigation of appellant's postaccident claim cannot be considered purposeful availment.  (See *Farmers Ins. Exchange v. Portage La Prairie Mut. Ins. Co.* (9th Cir. 1990) 907 F.2d 911, 913 (*Portage*) ["The district court properly placed little weight on post-accident communications.  Only contacts occurring prior to the event causing the litigation may be considered.  [Citation.]  Significant consideration of post-accident investigation and settlement contacts would deter good faith attempts by insurers to settle."].)  Appellant agrees that "post-accident conduct may not, on its own, establish minimum contacts."  Further, the question of governing law is not relevant to the jurisdictional analysis.  (*Halyard Health, Inc. v. Kimberly-Clark Corp.* (2019) 43 Cal.App.5th 1062, 1071 [holding that the question of governing law "has no place in our jurisdictional analysis"].)

Appellant emphasizes language in both *Southeastern* and *McClanahan* suggesting that "insurers of rambling automobiles . . . should reasonably anticipate being called into foreign forums." (*Southeastern, supra*, 34 Cal.App.4th at p. 9; see *McClanahan, supra*, 149 Cal.App.2d at p. 171 ["[i]t could be said that from the very nature of defendant's business, the insuring of automobile owners, that . . . the holder thereof might at some time be a user of the highways of this state . . ."].)  However, appellant provides no case holding that providing an automobile insurance policy that covers incidents within the state alone is sufficient, without more, to show the required purposeful availment of state benefits.  Case law suggests that the issuance of a policy covering incidents in California alone is not sufficient to constitute "purposeful availment" of the benefits of this forum. (See, e.g., *Benefit Assn. Internat., Inc. v. Superior Court* (1996) 46 Cal.App.4th 827, 833-834 (*Benefit*) [finding that insurance company's agreement to pay medical expenses incurred in California insufficient to constitute purposeful availment when the plaintiff "fail[ed] to present any evidence that [the insurance company] has been involved with California or 'purposely availed' itself of California's economic market"].)

Further, reasonable anticipation of being called into court is different from purposeful availment.  As noted in *Benefit*, "insuring . . . foreign citizens, knowing they might travel in California, [does] not constitute purposefully availing itself of the benefits of the economic market in California." (*Benefit, supra*, 46 Cal.App.4th at p. 834; see *Tri-West Ins. Services, Inc. v. Seguros Monterrey Aetna, S.A.* (2000) 78 Cal.App.4th 672, 677-678 [insurance company providing transit insurance covering goods being transported to and from Mexico not subject to jurisdiction in this state where "the sole act through which such

13

jurisdiction could arise was the issuance of an insurance policy which covered goods while in transit in California"].)  The United States Supreme Court has cautioned that "'"foreseeability" alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause.'" (*OMI Holdings, Inc. v. Royal Ins. Co. of Canada* (10th Cir. 1998) 149 F.3d 1086, 1094 (*OMI Holdings*), quoting *World-Wide Volkswagen Corp. v. Woodson* (1980) 444 U.S. 286, 295 (*World-Wide*).)  Thus, contrary to the statement in *Southeastern*, an insurer's "reasonabl[e] anticipa[tion]" of being called into court in California is insufficient to create jurisdiction.  (*Southeastern, supra*, 34 Cal.App.4th at p. 9.)[3]

The issue of purposeful availment is focused on the defendant's "'intentionality'" (*Pavlovich, supra*, 29 Cal.4th at p. 269), and is "intensely fact-specific" (*Rivelli, supra*, 67 Cal.App.5th at p. 392).  We find that under the circumstances of this specific case, the minimum contacts to assert personal jurisdiction over respondent are lacking.

*Portage, supra*, 907 F.2d 911 and *Rossman v. State Farm Mut. Auto. Ins. Co.* (4th Cir. 1987) 832 F.2d 282, federal cases cited by appellant, are distinguishable on the grounds that the insurance companies availed themselves of the courts in the relevant jurisdictions in order to defend or settle litigation there.[4]

---

[3]     We note that the dissent relies exclusively on *Southeastern* and fails to discuss the constitutional principles set forth in *World-Wide, OMI Holdings*, and *Benefit*.

[4]     We decline to discuss *McGow v. McCurry* (11th Cir. 2005) 412 F.3d 1207, as the decision has been abrogated after the 11th Circuit determined that the long-arm statute on which the decision was based "was not coextensive with constitutional due

14

As the parties point out, certain cases have distinguished between a nonresident liability insurer being sued for failure to defend an insured in a foreign state and a nonresident insurer being sued in the foreign state to provide first party benefits. (See, e.g., *OMI Holdings, supra*, 149 F.3d at p. 1095 ["While it is reasonably foreseeable that an insured would be involved in litigation with a third-party in another forum, it is not necessarily foreseeable that a dispute between the insured and the insurer over an insurance contract prepared, negotiated, and executed pursuant to Canadian law in Canada with a Canadian company would be litigated in a foreign forum where neither party has any contacts."].)  The *Southeastern* court rejected this distinction, finding it irrelevant.  Instead, the *Southeastern* court explained, "the important question is whether the nonresident defendant has 'purposefully availed' itself of the benefits of an economic market in the forum state."  (*Southeastern, supra*, 34 Cal.App.4th at p. 10.)

We agree with the *Southeastern* court that the question is not the type of lawsuit involved, but whether the facts before us show purposeful availment of the state's benefits.  Under the circumstances of this case, where the respondent had no contacts with California other than investigating appellant's claim for underinsured motorist coverage, we find respondent's minimum contacts to be insufficient.

---

process."  (*W. World Ins. Co. v. Narconon of Ga., Inc.* (N.D. Ga. 2014) 2014 U.S. Dist. LEXIS 206003, *8 [2014 WL 11860698]; see *Diamond Crystal Brands, Inc. v. Food Movers Internat., Inc.* (11th Cir. 2010) 593 F.3d 1249, 1263.)

15

**B.** *Whether the claim arises out of respondent's contacts with California*

In addition to the requirement of evidence that respondent purposely availed itself of the economic benefits of California, appellant must also prove that the claim she has asserted against respondent arises out of or relates to respondent's contacts with California. (*Halyard Health, Inc. v. Kimberly-Clark Corp., supra*, 43 Cal.App.5th at p. 1070.)

As set forth above, appellant has failed to show that respondent has any contacts with California other than a postaccident investigation of appellant's claim for underinsured motorist coverage. Her claim against respondent involves a contract between respondent and appellant's parents—a contract issued in Indiana to Indiana residents. The question of whether appellant is an insured under that policy does not involve any contact that respondent has had with California. Although appellant sustained her injuries in California, the resolution of her claims in that accident did not involve respondent's alleged obligation to defend her nor did it require respondent to avail itself of the court system here. Thus, appellant has failed to show that the claim she has asserted arises out of any contact respondent has had with California, and appellant has failed to meet this second prong of the specific jurisdiction test.

**C.** *Fair play and substantial justice*

The final element of the test for specific jurisdiction is whether the assertion of personal jurisdiction would comport with ""'fair play and substantial justice.'"" (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 447.) However, this element is not relevant unless the plaintiff has established that the defendant has sufficient minimum contacts with the state. (*Ibid.* ["'[O]nce it has been decided that a defendant purposefully

16

established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with "fair play and substantial justice.""'].)  In determining whether personal jurisdiction would comport with fair play and substantial justice, courts may evaluate "the burden on the defendant of appearing in the forum, the forum state's interest in adjudicating the claim, the plaintiff's interest in convenient and effective relief within the forum, judicial economy, and 'the "shared interest of the several States in furthering fundamental substantive social policies."'" (*Id.* at p. 448.)

Semanick has failed to establish that respondent has purposefully availed itself of the benefits of doing business in California or that her claims are related to activities of respondent in this state.  Therefore, we need not discuss the fairness element of personal jurisdiction.  However, we note that California has little interest in adjudicating a dispute between appellant, who claims to be an Indiana resident, and respondent on a contract formed in Indiana and subject to Indiana law.

Appellant emphasizes that the evidence and witnesses relating to the accident are present in California.  However, the issue in this case does not concern liability or damages resulting from the accident.  Instead, the issue is whether appellant is a resident of Indiana for the purposes of her coverage claim under her parents' contract with respondent.  Appellant emphasizes the location of the accident in arguing that the California forum provides her convenient and effective relief, and promotes judicial economy.  Again, because the details of the accident itself are not at issue in this lawsuit, appellant fails to convince us that California is the most efficient forum for this dispute.  As it involves an Indiana contract formed in the state of Indiana, and

17

the primary issue is whether appellant is an Indiana resident, considerations of convenience and judicial economy weigh in favor of disallowing specific jurisdiction. Finally, as both parties point out, in the event that appellant is determined to be an Indiana resident and respondent must provide coverage, any dispute over the amount of recovery must be arbitrated "in the county in which the 'insured' lives." Thus, if appellant is indeed a resident of Indiana and entitled to coverage, any further disputes must be arbitrated in Indiana.

Considering all the elements set forth above, we conclude that the exercise of jurisdiction over respondent under the specific circumstances of this case is inconsistent with the constitutional limits on judicial power.

## DISPOSITION

The judgment is affirmed. Each side is to bear their own costs of appeal.

_____

CHAVEZ, Acting P. J.

I concur:

_____

HOFFSTADT, J.

18

**Brittney Semanick v. State Automobile Mutual Insurance Companies**
**B316340**

**Benke, J.,[*] Dissenting**

There are multiple ways to interpret the constellation of cases addressing the existence of specific jurisdiction. I part company with my colleagues as to the picture created in this case by that constellation, and conclude the nationwide territory of coverage here, which encompasses third party liability coverage and coverage for damages caused to the insureds by underinsured motorists, constitutes "purposeful availment" of the privilege of conducting activity within California. Thus, I would find specific jurisdiction exists.

*Southeastern Express Systems v. Southern Guaranty Ins. Co.* (1995) 34 Cal.App.4th 1 (*Southestern*) is central to my analysis. There, residents of Georgia brought an action in California against their Georgia insurance company for refusing to defend a federal case brought against them in California. The insurance policy issued by the Georgia insurance company provided nationwide, third party liability coverage. When the trial court in California granted the insurance company's request to quash service of process for lack of jurisdiction, plaintiff Georgia residents (the insureds) appealed, and the *Southeastern* court reversed, concluding that given the nature of the territory of coverage, a wrongful refusal to defend the action is subject to specific jurisdiction in California.

---

* Retired Associate Justice of the Court of Appeal, Fourth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*Southeastern* can be read broadly as suggesting a nationwide territory of coverage clause may subject the insurance company to a state's specific jurisdiction where it purposely avails itself of the benefits of an *economic market* in the forum state (i.e., California). The court discussed at length how an economic market analysis operates, namely, that in writing and selling its insurance policy as one providing nationwide coverage, and collecting insurance premiums calculated upon that broad coverage, the insurance company benefited from the economic market of all states in which the insured faced liability, including California. This benefit in turn establishes purposeful availment.

With its economic analysis as background, *Southeastern* concluded that where there is third party liability coverage in the territory of coverage, the insurance company expects and agrees it will be called into the forum state if there is a third party lawsuit and thus should reasonably anticipate being called into forum courts if it denies coverage and is sued in the forum state. (*Southeastern, supra,* 34 Cal.App.4th at pp. 6-7.) I see no reason why this logic does not apply in this case.

There are several arguments available that *Southeastern* is not applicable to our case. One argument is that *Southeastern* is factually confined to *third party liability* coverage in cases involving *commercial entities*. I would first point out that the opinion appears to expressly erase the analytical distinction between third and first party coverage. The panel noted it was "not persuaded that a constitutionally significant distinction exists between first party and third party actions against a nonresident insurer providing nationwide coverage." (*Southeastern, supra*, 34 Cal.App.4th at p. 10.) Moreover, although one might argue it is only coverage of *commercial* entities to which *Southeastern* addresses itself, nothing in the

opinion appears to so confine its holding and rationale. The fact a commercial entity was involved constitutes a difference in facts but not one limiting the application of *Southeastern*. Rather, I believe the case exemplifies the observation that each case must be examined individually to discern the parties' intent. In *Southeastern*, the insurance company issued a nationwide policy designed to address the concerns of a commercial enterprise.

Thus, although our respondent agreed to cover damages for bodily injury or property damage any insured becomes legally responsible to pay, including a duty to settle or defend, respondent's policy is also drawn to address an important concern of insureds traveling through multiple jurisdictions, namely that an underinsured motorist may subject *them* to injury and damages. By addressing this concern, and expressly carving out this specific obligation, respondent surely anticipated it might choose to avail itself of the jurisdiction of any forum where such damage or injury caused by underinsured motorists, occurred. In declining such underinsured coverage, respondent should not be surprised it is being sued in the state where such damage and injury occurred.

I believe the economic reach of the territory of coverage clause, coupled with the third party liability coverage (anticipated defense of insureds in California), and coverage of damages *to the insured* for injury by an underinsured motor vehicle, bring this case within the ambit of those cases that would find specific jurisdiction in California.

Further, I do not observe any compelling reason why California, once determined to have specific jurisdiction, is an inconvenient forum. The accident occurred in California, witnesses are in this state, as is other evidence. Moreover, respondent has demonstrated it is quite capable of mounting a

3

defense with the assistance of law firms in this state, and indeed it may anticipate being called into, or employing, California courts if third party coverage liability arises.

Finally, I do not suggest coverage is ultimately owed. The issue of whether Brittney is covered by her parents' policy is not before us.


_____
BENKE, J.*

---

\*       Retired Associate Justice of the Court of Appeal, Fourth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.